**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| DENNIS FLAHERTY, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF REGENTS OF THE UNIVERSITY OF SYSTEM OF GEORGIA, DOES 1-5, in their Official Capacity, and DOES 6-10, in their Individual Capacity, <br><br> Defendants. | **DEMAND FOR JURY TRIAL** <br><br> CIVIL ACTION NO. |

## COMPLAINT

Plaintiff Dennis Flaherty ("Flaherty"), by and through his undersigned attorneys, states his claims against Defendant Board of Regents of the University of System of Georgia ("Board"), Defendant Does 1-5, in their official capacity, and Defendant Does 6-10, in their individual capacity (sometimes collectively, the "Defendants"), as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Flaherty is an individual who resides in California.

1

2.      Defendant Board is the governing body of various university institutions in the State of Georgia, and has a principal place of business and headquarters at 270 Washington Street, SW, Atlanta, Georgia 30334.

3.      On information and belief, Defendant Board may be served through its agent/member, Mr. Samuel C. Burch, Vice Chancellor, Office of Legal Affairs, and Secretary to Defendant Board, at 270 Washington Street, S.W., Atlanta, Georgia 30334.[1]

4.      Pursuant to the Georgia Constitution, Defendant Board is charged with the governing, control, and management of the University System of Georgia (USG) and each of its member institutions, and its employees and agents.  In their official capacities, individual members of Defendant Board are responsible for said control and management.

5.      Armstrong State University is a member institution of USG ("Member Armstrong")[2].

6.      On information and belief, one or more of Does 1-5, in an official capacity, are an individual member of, agent, affiliate, officer, director, manager, principal, partner, joint venturer, joint actor, alter ego, hired contractor, content

---

[1] *See* http://www.usg.edu/policymanual/section12/C1769 ("The Secretary and Assistant Secretaries to the Board shall be the agents for service of process for the Board of Regents and its members (BoR Minutes, June 2008).")
[2] Formerly known as "Armstrong Atlantic State University"

manager and/or employee of Defendant Board.  Plaintiff does not know the true

names of Defendant Does 1 through 5, inclusive, and therefore sues them by those

fictitious names.  When Plaintiff learns the true names and capacities of Does 1

through 5, Plaintiff will seek leave of Court to amend this Complaint by inserting

same herein and having service upon these Defendants.  Plaintiff is informed and

believes and, on the basis of that information and belief, alleges that each of those

Does 1 through 5 was in some manner liable for Plaintiff's claims and proximately

caused Plaintiff's damages complained of here.

       7.     On information and belief, one or more of Does 6-10, in an individual

capacity, is personally responsible for Plaintiff's claims.  Plaintiff does not know

the true names of Defendant Does 6 through 10, inclusive, and therefore sues them

by those fictitious names.  When Plaintiff learns the true names of Does 6 through

10, Plaintiff will seek leave of Court to amend this Complaint by inserting same

herein and having service upon these Defendants.  Plaintiff is informed and

believes and, on the basis of that information and belief, alleges that each of those

Does 6 through 10 was in some manner personally in an individual capacity liable

for Plaintiff's claims and proximately caused Plaintiff's damages complained of

here.

8.     This action arises under the Federal Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*  This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (copyright jurisdiction).

9.     This Court has personal jurisdiction over Defendant Board by virtue of its presence, principal place of business, and transacting, doing, and soliciting business, in this District.

10.    Venue is proper under 28 U.S.C. §§ 1391 (b)(2), (c)(1-2), and (d), and 28 U.S.C. § 1400(a).

## FACTUAL BACKGROUND COMMON TO ALL COUNTS

11.    Plaintiff Flaherty is a professional photographer whose livelihood is based on his ability to receive revenue derived from his creative endeavors. Plaintiff creates unique, original, and insightful photographs, is award-winning, and is recognized in competitions, professional groups, and media organizations the world over.

12.    Flaherty provides professional photography services via his photography business Dennis Flaherty Photography.  Flaherty provides licensing of his photographs through various agents, and via his website located at Uniform Resource Locator ("URL"): http://dennisflaherty.com.

4

13.     In 2005, Flaherty, acting in the scope of a professional photographer, expended considerable time and effort in taking a business trip to the country of Ireland.  During this period, one facet of Plaintiff's business was directed to the provision of photographs for Irish pub calendars – thus he endeavored to take numerous photos of landscapes, castles, and other sites of interest in that country. One particular site of interest was the Lismore Castle found in County Waterford, Ireland.

14.     Plaintiff is the author of, exclusive owner of, and registered claimant of all copyright rights in and to the original scenic photograph of Lismore Castle, designated with Catalog ID "IR670965" (the "Photograph").  A true copy of the Photograph is depicted in Exhibit 1 attached hereto.

15.     One immediately recognizable element of the Photograph is the coloration of the sky.  This occurred by Plaintiff's purposeful selection of a graduated filter that allowed for coloration of the sky, while maintaining (for the most part) non-coloration of the remainder of the scene (*e.g.*, castle, trees, water, etc.).

16.     The location where the Photograph was created was not random; Plaintiff purposefully spent time (hours) assessing the venue for what he ultimately decided would be the best position for taking photos.

5

17.    Moreover, the Photograph was not the result of a digital work; instead, Plaintiff's Photograph was taken with the aid of film.  What this means is that Plaintiff, without the aid of digital display and instantaneous review, used his experience and professional judgment to determine that he had taken a sufficient enough photo for his business purpose(s), that upon later development, ultimately resulted in the Photograph.

18.    The Photograph is an original work of authorship, fixed in a tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of the machine or a device.  As such, the Photograph is subject matter protectable under the Copyright Act.

19.    The Photograph in perspective, orientation, positioning, lighting and other details is entirely original, distinctive, and unique.  As such, the Photograph is subject matter protectable under the Copyright Act.

20.    Pursuant to the Copyright Act, the term "copyright management information" ("CMI") includes, among other forms of information: (1) the title and other information identifying the work, including the information set forth in a notice of copyright; (2) the name of, and other identifying information about, the author of a work, and (3) the name of, and other identifying information about, the copyright owner of a work, including the information set forth in a notice of

copyright.  17 U.S.C. §§ 1202(c)(1)-(3).

21.    Plaintiff's CMI is provided on or proximate to the Photograph wherever the Photograph, or derivative work based on the Photograph, legitimately appears or appeared, including Plaintiff's website www.dennisflaherty.com.  A true and correct copy of the Photograph bearing Plaintiff's CMI (pursuant to 17 USC § 1202(c)(1), (c)(2), and/or (c)(3)) is also provided for in Exhibit 1 and incorporated herein by reference.

22.    As published by Flaherty for purposes of viewing, licensing, etc. via his website, the Photograph bears various information that constitutes Flaherty's CMI, viewable at, for example, the Page URL:

http://www.dennisflaherty.com/cgi/ImageFolio4/imageFolio.cgi?action=view&link=___INTER NATIONAL/IRELAND&image=IR670965.jpg



(red arrows added to screenshot for directing attention to Flaherty's CMI)

23.     Copyright in the Photograph is and has been for all times relevant to the claims of this Complaint registered with the U.S. Copyright Office.  The Photograph is the subject of Certificate of Registration No. VA 1-778-941 ("Certificate"), issued with an effective date of July 11, 2011.  A true copy of the Certificate is attached hereto as Exhibit 2.

24.     On information and belief, as part of its overall appeal and attraction to potential students and faculty, and for creating a revenue stream, Defendant Board operates, manages, and controls a "study abroad" program (the "USG Program") through the member institutions of USG.

25.    Information about the USG Program can be obtained from numerous USG websites, including, by way of example:

https://www.armstrong.edu/students/study-abroad

26.    A specific part of the USG Program pertains to a 'Summer' program in Waterford, Ireland ("USG Ireland Program").

27.    Information about the USG Ireland Program can be obtained from a number of USG websites, including, by way of example:

https://www.armstrong.edu/students/study-abroad-ireland-waterford

28.    On information and belief, Defendant Board is ultimately responsible for websites pertaining to member institutions of USG, including as it pertains to information and content provided thereon:[3]

> The Georgia Constitution grants to the Board of Regents the exclusive right to govern, control, and manage the University System of Georgia, an educational system comprised of thirty-five institutions of higher learning, a marine research institute, and a central University System Office. The Board exercises and fulfills its constitutional obligations, in part, by promulgating rules and policies for the governance of the University System and its constituent units.

---

[3] See http://www.usg.edu/policymanual/

29.     Accordingly, Defendant Board is ultimately responsible as the registrant, manager, owner, end-user, operator, etc. of the website hosted at URL: http://www.armstrong.edu (referred to herein as the "Website").

30.     The Website is used by Defendant Board to promote and facilitate its commercial interests, including those as it pertains to the USG Ireland Program.

31.     To aid in administering its significant policy and rulemaking, Defendant Board delegates various tasks to its member institutions, including those that pertain to 'website design and content guidelines'.

32.     The entity or person to whom responsibility for this role with the Website is delegated is "Marketing & Communications" ("Marketing Body"):[4]

> All second-level pages will be developed, designed and maintained by the Marketing & Communications.

33.     On information and belief, one or more of Does 1-10 is in a position of supervision or responsibility with the Marketing Body.

34.     In a further role of delegation, content of or for the Website may be added, edited, modified, etc. via a "Content Manger" ("Content Manager"):[5]

> Content of pages within colleges and department sections will be

---

[4] See https://www.armstrong.edu/departments/marketing-website-design-and-content-guidelines
[5] See https://www.armstrong.edu/departments/marketing-website-design-and-content-guidelines ("Required Content Manager Training")

maintained by content managers designated by college deans or department heads. To gain access to the site, content managers are required to be trained in using Expression Engine, the website's content management system.

35.    On information and belief, one or more of Does 1-10 is the Content Manager for Page URL:

https://www.armstrong.edu/students/study-abroad-ireland-waterford

36.    According to the polices of Defendant Board, content added to the Website, such as photography or other images, should be provided or approved by the Marketing Body.

**First Act of Infringement by One or More Defendants (2010-2013)**

37.    Flaherty's trials and tribulations with the Defendants and their use of the Photograph are not a recent development.

38.    On information and belief, at some point prior to the effective date of the Certificate, Defendant Board (and Member Armstrong), without authorization or permission, used the Photograph, a derivative work based on the Photograph, or an image strikingly or substantially similar thereto, in a commercial nature on the Website and/or in distributable advertising literature.  Defendant Board used the Photograph in a commercial manner continuously between (approximately) 2009-2013 (the "First Act of Infringement").

11

39.     At some point in 2011, Flaherty became aware of Defendant Board's use of the Photograph.  Flaherty sought and subsequently retained an attorney to aid him in regard to the Defendants' use.  At no time, neither did Defendant Board, nor its agents, employees, departments, member institutions (including Member Armstrong), etc. have a license or other authorization for the Board's First Act of Infringement.

40.     Attached hereto as <u>Composite Exhibit 3</u> are true copies of screenshots of the Photograph as reproduced and displayed publicly on the Website and in downloadable brochure media, and as viewable via standard web browser.[6]  For clarity, in that exhibit Flaherty has added various red outline around uses of his Photograph and/or time/date stamps, while other material may be blacked out or otherwise redacted.

41.     At no point prior to the First Act of Infringement was Flaherty provided notice or a pre-deprivation proceeding pertaining to the taking and use of Flaherty's property.

42.     On information and belief, the Board's First Act of Infringement, including reproduction, display, and/or distribution, constituted an infringement of Plaintiff's copyright and exclusive rights in and to the Photograph.

---

[6] See Screenshot Nos. 1-4 as pertaining to the First Act of Infringement

12

43.     On or about December 6, 2012, Plaintiff, by way of his attorney, notified Defendant Board, via correspondence sent to General Counsel or Legal Affairs for Member Armstrong, as to its use ("1st Notice"), and also made reasonable request to resolve any possible claims without aid of court.

44.     The 1st Notice expressly stated, in part:

"it is hereby demanded that [Member Armstrong]…Immediately **cease and desist from all unlicensed use of the above image(s)**, including removal of the image(s) from the website(s), deletion of all digital copies of the images from company computers and digital storage devices, and destruction of any hard copies of those image(s) maintained in company files or elsewhere."

45.     On or about December 26, 2012, without any reply by Defendant Board or Member Armstrong to the 1st Notice, Plaintiff through his attorney provided additional notification to one or more Defendants as to their unauthorized and continued use ("2nd Notice"), and also made reasonable request to resolve any possible claims outside of a legal setting.

46.     The 2nd Notice stated, in part:

"Moreover, it does not sit well with my Client that [Member Armstrong], an entity who knew or should have known it was not a licensee nor an owner of the [Photograph], is still using the [Photograph] at its own volition and benefit at the following:

http://www.armstrong.edu/images/international/USG_Ireland_large.jpg"

13

47.     As a result of the continued use by Defendant Board, the 2nd Notice

reiterated, in part:

> "it is hereby demanded that [Member Armstrong]…Immediately **cease and desist from
> all unlicensed use of the above image(s)**, including removal of the image(s) from the
> website(s), deletion of all digital copies of the images from company computers and digital
> storage devices, and destruction of any hard copies of those image(s) maintained in
> company files or elsewhere."

48.     On or about January 4, 2013, Counsel for Defendant Board[7]

responded to the 2nd Notice ("Board Response"), and stated it could not evaluate

ownership of copyright by Plaintiff, but acknowledged the Photograph did appear

on the Website and that the Photograph was used with the USG Ireland Program.

49.     Counsel for Defendant Board also materially represented that all

known appearances of the Photograph on the Website had been removed.

50.     The Board Response further materially represented and warranted (the

"Board Representation"):

> "However, [Board/Member Armstrong] will not distribute or publish the [Photograph] in
> physical or electronic form, including posts on the internet."

---

[7] See http://www.usg.edu/legal/directories (USG website indicates E. Lee Davis is one if its attorneys)

51.     On or about January 15, 2013, without any further action or reply, and given that Defendant Board continued to use the Photograph (despite the Board Representation), Plaintiff through his attorney provided yet additional notification to one or more Defendants as to their use ("3rd Notice"), and also made reasonable request to resolve any possible claims outside of a legal setting.

52.     In the 3rd Notice, Plaintiff indicated display and reproduction of the Photograph was still occurring on or via the Website.

53.     On or about February 24, 2013, still without any further action or reply by Defendant Board, and given that Defendant Board continued to use the Photograph (despite the Board Representation), Plaintiff through his counsel provided a final notification to Defendant Board as to its use ("Final Notification"), and also made reasonable request to resolve the matter on business terms, including an offer that Plaintiff believed was below the fair market value of an arms-length license negotiation for the prior use of the Photograph.

54.     Despite Plaintiff's efforts, Defendant Board still displayed and reproduced the Photograph on the Website as of February 24, 2013.  In the Final Notification, Plaintiff again notified Defendants of its continued infringement of Plaintiff's rights in this regard.

15

55.   In particular, the Final Notification stated, in part:

"Accordingly, it is hereby demanded that [Member Armstrong]…**Cease and desist from all unlicensed use of the above image(s)**, including removal of the image(s) from the website(s), deletion of all digital copies of the images from company computers and digital storage devices, and destruction of any hard copies of those image(s) maintained in company files or elsewhere."

**Ante Litem Notice to Defendant Board (2013)**

56.   Despite his repeated notifications, by March of 2013 Defendant Board had yet to completely cease use of the Photograph, and failed to make any reasonable attempt whatsoever to resolve Flaherty's claim(s) thereagainst.

57.   On information and belief, in order to bring a civil claim against Defendant Board, Flaherty was required to comply with O.C.G.A. § 50-21-26.

58.   In summary, this section requires a would-be plaintiff to provide "Notice" to the State of any tort claim.

59.   In accordance with O.C.G.A. § 50-21-26(a)(4), a copy of the notice of claim presented to the Department of Administrative Services on April 1, 2013 (the "Ante Litem Notice"), together with the certified mail delivery receipt, are attached herewith as Exhibit 4.

60.    Flaherty's efforts with the Ante Litem Notice were fruitless.  This post-deprivation proceeding available to Flaherty only resulted in additional time and resources expended by Flaherty, and was to no avail.

61.    An acknowledgement letter and email string entailing all conversation and correspondence between GA Administrative Services and Plaintiff by his attorney are attached herewith as Exhibit 5.

62.    As is readily apparent from the facts outlined for the First Act of Infringement, Plaintiff, as a result of Defendant Board's unwillingness to resolve his claim, let alone cease using the Photograph, was left with no option but to undertake inordinate and extensive action well beyond the realm of *reasonable* in the enforcement of his copyright.

63.    Eventually, as a man of finite and limited resources, and upon information and belief: that at some point in the latter half of 2013, Defendant Board *finally* ceased use of the Photograph; that the Board would abide by the Board Representation; and that any civil action would be met, not with willingness to resolve the matter, but instead be stonewalled by a sea of attorneys and claims of various immunities, Plaintiff decided to refrain from any further action.

**Second Act of Infringement by One or More Defendants (2015)**

64.     To his dismay, Plaintiff has recently discovered that the Defendants are now again using the Photograph in connection with promoting the USG Ireland Program.

65.     This new use ("Second Act of Infringement") has occurred: despite repeated notification from Plaintiff as to his copyright in and to the Photograph; despite Defendant Board' and Member Armstrong's knowledge and awareness of Plaintiff's CMI; despite the Board Representation; despite Board polices and procedures; and despite Flaherty's Ante Litem Notice.

66.     Prior to the Second Act of Infringement resulting in further deprivation of Flaherty's property interest, Flaherty received no notice, nor any pre-deprivation proceeding.

## FIRST CAUSE OF ACTION – DEFENDANT DOES 1-10

### Copyright Infringement – 17 U.S.C. §§ 101 *et seq.*

67.     Flaherty re-alleges and incorporates by reference paragraphs 1 through 66 above.

68.     As a result of the Second Act of Infringement, Defendant Does 6-10, in their individual capacity, personally engaged in violating Flaherty's exclusive

18

rights granted in 17 U.S.C. § 106, specifically, but not limited to, his exclusive rights to: (1) reproduce the Photograph in copies (including in its digital form in a computer memory); and (4) display the Photograph publicly, such as on a publicly accessible website viewable with a standard web browser program.

69.     The Second Act is a new, separate, and temporally distinct infringement occurring approximately two years after the First Act completely ceased.  The Second Act is believed to have started on July 25, 2015.

70.     Screenshot Nos. 5-7 of <u>Composite Exhibit 3</u> illustrate true copies of the Photograph as reproduced and displayed publicly on the Website, and as viewable via standard web browser pertaining to the new use.  For clarity, in that exhibit Flaherty has added various red outline around uses of his Photograph and/or time/date stamps, while other material may be blacked out or otherwise redacted.

71.     All of Flaherty's claims based on the Second Act of Infringement are within the three-year statute of limitations period pursuant to 17 U.S.C. § 507(b), and are post-registration of the copyrighted Photograph.

72.     At the time of the Second Act of Infringement, Flaherty's rights were clearly established, and Does 6-10 knew, or should have known, that their conduct

was in violation of the Copyright Act, let alone in violation of various policies of Defendant Board and its member institution(s).

73.     As a direct and proximate result of its wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Flaherty for the Photograph.  Accordingly, Flaherty is entitled to an award of actual damages and profits pursuant to 17 U.S.C. § 504(b) against Does 6-10.

74.     In the alternative, Flaherty is entitled to statutory damages for the Second Act of Infringement of the Photograph, and attorneys' fees and costs, pursuant to 17 U.S.C. §§ 504(c)(1) and 505 against Does 6-10.

75.     The Second Act of Infringement by Defendants is intentional, willful, and performed with knowledge that the reproduction(s), display(s), and distribution(s) of the Photograph were unauthorized.  Among other things, Defendant Board's own policy states, "[a]ny use of other copyrighted material **must have the express written permission of the person…that owns the copyright**."[8]

76.     In no way can it be reasonably implied, explained, or suggested that Defendant Does 6-10 took any steps whatsoever to obtain Flaherty's express written permission to use the Photograph.

---

[8] See https://www.armstrong.edu/departments/marketing-university-website-policy/marpolicies

77.    Moreover, the Second Act of Infringement is a direct, blatant, and intentional breach of the Board Representation made to Flaherty.

78.    Flaherty is therefore entitled to the recovery of enhanced statutory damages pursuant to 17 U.S.C. § 504 (c)(2) from Does 6-10.

79.    With respect to Defendant Does 1-5 in their official capacity, as well as Does 6-10 in their individual capacity, their repeated and ongoing conduct has caused, and unless enjoined and restrained by this Court will continue to cause, Flaherty great and irreparable injury that cannot fully be compensated for or measured in monetary damages.

80.    Prior conduct by Defendant Does 1-5 indicates Flaherty's sole remedy for his claim of copyright infringement thereagainst is to prevent the Defendant Does 1-5 from ever again using the Photograph.  In this respect, Flaherty is entitled to permanent injunctive relief against Does 1-5 under 17 U.S.C. § 502 and the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908).

## SECOND CAUSE OF ACTION – DOES 6-10

### Removal or Alteration of CMI in violation of 17 U.S.C. § 1202(b)

81.    Flaherty re-alleges and incorporates by reference paragraphs 1 through 80 above.

21

82.     On information and belief, and knowing or having reasonable grounds to know that the Defendants would induce, enable, facilitate or conceal infringement of Flaherty's rights under Title 17, the Defendant Does 6-10 personally: (1) intentionally removed or altered CMI; (2) distributed one or more copies of the Photograph knowing that CMI had been removed or altered without authority of the copyright owner; and/or (3) publicly displayed one or more copies of the Photograph, while knowing that CMI had been removed or altered without authority of the copyright owner or the law, all in violation of 17 U.S.C. § 1202(b)

83.     Defendant Does 6-10 have actual and/or constructive knowledge of Flaherty's CMI as it pertains specifically to the Photograph.  Moreover, as Flaherty displays it on his website, the Photograph bears the CMI of "©Dennis Flaherty".

84.     On information and belief, Defendant Does 6-10, despite their knowledge, personally removed, altered, and/or omitted this information from the Photograph, and/or cropped the Photograph to exclude it, in the copy that they displayed publicly on the Website and otherwise used.

85.     Such wrongful conduct damaged Flaherty in an amount to be determined at trial.

86.     As a direct and proximate result of Defendants' wrongful conduct, Flaherty has suffered damages and so is entitled to the remedies set forth under 17 U.S.C. § 1203.

87.     Specifically, Flaherty is entitled to seek actual damages pursuant to 17 U.S.C. § 1203(c)(2).

88.     In the alternative, Flaherty is entitled seek statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B), and costs of litigation and attorneys' fees pursuant to 17 U.S.C. § 1203(b)(4-5).

## **THIRD CAUSE OF ACTION – DEFENDANT BOARD**

### Due Process Violation of the Fourteenth Amendment

89.     Flaherty re-alleges and incorporates by reference paragraphs 1 through 88 above.

90.     This Count alleges a Fourteenth Amendment due process violation pursuant to *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed 2d 650 (2006).

91.     Flaherty enjoys a constitutionally protected property interest in the Photograph.

92.     Defendant Board's repeated deprivation of Flaherty's constitutionally protected property interest was without due process of law because Defendant Board provided no notice whatsoever as to the use of Flaherty's property, nor did Defendant Board provide adequate remedies for the First Act of Infringement and/or the Second Act of Infringement.

93.     Defendant Board failed to provide any adequate pre- and/or post-deprivation process related to one or both of the First Act of Infringement and the Second Act of Infringement.

94.     The Second Act of Infringement is a result of a direct, blatant, and intentional breach of the Board Representation.

95.     Flaherty to his detriment relied on the Board Representation when he made his decision to cease further action against Defendant Board related to the First Act of Infringement.

96.     In an irony, before Flaherty could contemplate taking legal action related to the First Act of Infringement, he was required to provide his Ante Litem Notice to Defendant Board, yet Defendant Board failed to reciprocate this due process to Flaherty before he was yet again deprived of his property interest.

97.     Defendant Board knew the identity of Flaherty and the existence of his copyright in and to the Photograph prior to depriving him of his property interest with the Second Act of Infringement.

98.     The Defendant Board's intentional Second Act of Infringement without due process of law constitutes unconstitutional conduct in violation of the Fourteenth Amendment.

99.     Plaintiff has been damaged by Defendant Board's <u>repeated</u> and <u>ongoing</u> actions, such that he is entitled to damages under 17 U.S.C. § 511(b) (of the Copyright Remedy Clarification Act), which is congruent and proportional so as to qualify as valid prophylactic legislation under *City of Boerne v. Flores*, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997), and/or § 5 of the Fourteenth Amendment.

100.    Under Article 1, Congress has the power to enact legislation that abrogates state sovereign immunity for unconstitutional acts, namely, intentional copyright infringement without due process of law.

101.    Plaintiff is entitled to damages under *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L. Ed 2d 650 (2006).

## **PRAYER FOR RELIEF**

WHEREFORE, Flaherty prays that this Honorable Court:

1.      On Count 1, issue an order that Defendant Does 1-10 unauthorized conduct

violates Flaherty's rights under the Federal Copyright Act at 17 U.S.C. §101,

et seq.;

2.      On Count 1, order Defendant Does 1-10 to account to Flaherty for all gains,

profits, and advantages derived from the Second Act of Infringement;

3.      On Count 1, order that that Defendant Does 6-10 are jointly and severally

liable for the direct infringement of Flaherty's copyrights in the Photograph.

4.      On Count 1, order Defendant Does 6-10 to pay Flaherty all profits and

damages in such amount as may be found pursuant to 17 U.S.C. § 504(b)

(with interest thereon at the highest legal rate) for the Second Act of

Infringement;  alternatively, maximum statutory damages in the amount of

$30,000 for the Second Act of Infringement pursuant to 17 U.S.C. § 504

(c)(1); or such other amount as may be proper pursuant to 17 U.S.C. § 504;

5.      On Count 1, award Flaherty maximum statutory damages in the amount of

$150,000 for Defendant Does 6-10 willful infringement pursuant to 17

U.S.C. § 504 (c)(2); or such other amount as may be proper pursuant to 17 U.S.C. § 504;

6. On Count 1, order Defendant Does 1-10, their agents, and their servants to be enjoined permanently from infringing the copyrights of Flaherty in any manner and from reproducing, distributing, displaying, or creating derivative works of the Photograph;

7. On Count 2, issue an order that Defendant Does 6-10: intentionally removed or altered (by way of omitting) Flaherty's CMI; distributed to the public a copy of the Photograph knowing Flaherty's CMI has been removed without his permission; publicly displayed a copy of the Photograph knowing Flaherty's CMI has been removed without his permission, while knowing, or reasonable grounds to know, that such actions induced, enabled, facilitated, or concealed the Second Act of Infringement;

8. On Count 2, award Flaherty actual damages suffered and profits for each violation of 17 U.S.C. § 1202 (b), pursuant to 17 U.S.C. § 1203(c)(2); or such other amount as may be proper pursuant to 17 U.S.C. § 1203;

9. On Count 2, award Flaherty maximum statutory damages in an amount up to $25,000 for each violation of 17 U.S.C. § 1202 (b), pursuant to 17 U.S.C. §

1203(c)(3)(B); or such other amount as may be proper pursuant to 17 U.S.C. § 1203;

10.   On Counts 1 and 2, order Defendant Does 6-10 to pay Flaherty his costs of litigation and reasonable attorneys' fees in this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1203;

11.   On Count 3, order that Defendant Board breached the Board Representation.

12.   On Count 3, order that Defendant Board committed an intentional act of copyright infringement without due process of law, and thus violated Flaherty's rights under the Fourteenth Amendment.

13.   On Count 3, award Flaherty maximum damages pursuant to 17 U.S.C. § 511(b) and/or 17 U.S.C. § 504 (c)(2); or such other amount as may be proper pursuant to 17 U.S.C. § 504;

14.   On Count 3, order Defendant Board to pay Flaherty his costs of litigation and reasonable attorneys' fees in this action pursuant to 17 U.S.C. § 511(b) and/or 17 U.S.C. § 505;

15.   On all counts, order Defendants to deliver to Flaherty all copies of the Photograph and all other materials containing such infringing copies of the Photograph in their possession, custody or control; and

16.     On all Counts, order such other and further relief as this Honorable Court

deems just and equitable.


**Flaherty demands a jury trial on all of the foregoing counts.**

This 19th day of May, 2016.


                              Respectfully submitted,


                    By:   **s/ Tennell Lockett**
                          D. Tennell Lockett, Esq.
                          Georgia Bar No. 455547

                          Townsend & Lockett, LLC
                             1401 Peachtree Street, Suite 500
                             Atlanta, GA 30309
                                (404) 870-8506 (phone)
                          tennell.lockett@townsendlockett.com

                          Attorneys for Plaintiff Dennis Flaherty

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1.C</u>

Counsel for Plaintiff hereby certifies that this pleading was prepared in

Times New Roman font, 14 point, in compliance with Local Rule 5.1.C.

This 19th day of May, 2016.

Respectfully submitted,

By:   **s/ Tennell Lockett**
D. Tennell Lockett, Esq.
Georgia Bar No. 455547

Townsend & Lockett, LLC
1401 Peachtree Street, Suite 500
Atlanta, GA 30309
(404) 870-8506 (phone)
tennell.lockett@townsendlockett.com

Attorneys for Plaintiff Dennis Flaherty

30